# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REBECCA A. O'SULLIVAN,          )
                                      )

        **Plaintiff,**          )
                                      )

v.                                )      **Case No. 18-1250-JTM-GEB**
                                      )

**HARTFORD LIFE AND**             )
**ACCIDENT INSURANCE COMPANY,**  )
                                      )

        **Defendant.**        )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion to Compel Discovery Responses. On May 7, 2019, the Court conducted a hearing on the motion. Plaintiff Rebecca O'Sullivan appeared through counsel, Donald Peterson, II and Sean McGivern. Defendant Hartford Life and Accident Insurance Company appeared through counsel, Steven Davidson. After consideration of Plaintiff's motion (ECF No. 21), Defendant's Memorandum in Opposition (ECF No. 30), and Plaintiff's Reply (ECF No. 31), along with additional argument from counsel, Plaintiff's Motion to Compel was **GRANTED in part** and **DENIED in part** by oral rulings during the hearing. This written opinion memorializes those rulings.

# I.    Background[1]

Plaintiff Rebecca A. O'Sullivan initially filed this case in the Sedgwick County District Court[2] against defendant Hartford Life and Accident Insurance Company ("Hartford"), the issuer and administrator of a long-term disability plan ("Plan") for Plaintiff's former employer, Spirit Aerosystems Holdings, Inc. ("Spirit").  Plaintiff worked for Spirit from approximately 2006 through August 5, 2014.  In late 2012 and 2013, Plaintiff suffered from medical issues, including West Nile virus and Grave's disease.  In 2013, Plaintiff's thyroid was surgically removed, leaving her with lingering physical difficulties.  Plaintiff's last day of work was August 5, 2014, and she was initially placed on leave, but Spirit ultimately terminated her employment in October 2015.

Plaintiff applied for long-term disability ("LTD") benefits, and Defendant denied her claim, with Defendant's final letter denying her appeals dated October 6, 2017.  She claims Defendant's decision to deny her benefits was arbitrary, capricious, and not supported by substantial evidence.  Defendant hired two physicians to review her case, and Plaintiff alleges those physicians used inaccurate and unreasonable review procedures.  For example, Plaintiff claims one of the physicians was a psychiatrist, who never examined Plaintiff, despite the American Psychiatric Association's ethical rules prohibiting psychiatrists from offering a professional opinion without an examination. Plaintiff

---

[1] The information recited in this section is taken from the parties' briefs regarding discovery (ECF Nos. 21, 30, 31); and Plaintiff's Petition attached to the Notice of Removal (ECF No. 1, Ex. 1). This background information should not be construed as judicial findings or factual determinations.

[2] *O'Sullivan v. Hartford Life and Accident Insurance Company*, No. 2018-CV-001783-OT (Sedgwick County Dist. Ct., filed Aug. 13, 2018).

brought this case to recover LTD benefits under the employee benefit plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Defendant removed the case to this federal court on September 4, 2018. During the Scheduling Conference held on December 3, 2018, the parties discussed potential discovery issues. The parties disagreed on the appropriateness of discovery outside the administrative record reviewed by Defendant when determining Plaintiff's eligibility for LTD benefits. (*See* Scheduling Order, ECF No. 9 at 5 ¶ 2.e.) In light of the discussions during the scheduling conference, the Court ordered the parties to continue to confer regarding the potential of extra-record discovery. Additionally, the Scheduling Order required Defendant to produce the administrative record by December 21, 2018, and Plaintiff was to notify Defendant of any objections to the content of the record by January 11, 2019. (Scheduling Order, ECF No. 9 at 3.)

After the parties' efforts to confer failed, Plaintiff filed her Motion to Compel on March 22, 2019. (ECF No. 21.) During an April 5, 2019 status conference, all deadlines were stayed pending resolution of the motion to compel. (Order, ECF No. 27.) Upon completion of the parties' written briefing, the Court convened the May 7, 2019 conference to further discuss the issue.

## II.     Legal Standard

When deciding whether discovery is appropriate in an ERISA denial-of-benefits case, the Court must first acknowledge the standard by which it reviews the claims administrator's decision. The Supreme Court determined "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[3]  If the benefits plan gives the administrator discretionary authority, the Court applies an arbitrary and capricious standard of review.[4]  The parties' briefs each suggest the Plan granted Defendant, as claim fiduciary, discretionary authority to interpret the Plan.  Therefore, the Court will ultimately review this case under the arbitrary and capricious standard of review.

When utilizing the arbitrary and capricious standard to review the administrator's decision, "the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision."[5]  Therefore, the court's review is usually "limited to the administrative record—the materials compiled by the administrator in the course of making his decision,"[6] and it "is the unusual case in which the district court should permit supplementation of the record."[7]  "The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety."[8]  Courts do not look favorably on attempts to discover or present additional substantive evidence regarding the applicant's disability.[9]  But courts have permitted discovery, outside the administrative record, under such "exceptional circumstances" as when a conflict of

---

[3] *Jaremko v. ERISA Admin. Comm.*, No. 10-1137-RDR, 2011 WL 42881, at *1 (D. Kan. Jan. 6, 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).

[4] *Id.* (citing *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1167 (10th Cir. 2006)).

[5] *Id.* (citing *Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir. 2002)).

[6] *McNeal v. Frontier AG, Inc.*, No. 12–1284–RDR, 998 F. Supp. 2d 1037, 1041 (D. Kan. 2014) (citing *Holcomb v. Unum Life Ins. Co. of America,* 578 F.3d 1187, 1192 (10th Cir. 2009) (internal citation omitted)).

[7] *Id.* (citing *Hall v. UNUM Life Ins. Co. of Am.,* 300 F.3d 1197, 1203 (10th Cir. 2002)).

[8] *Id.* (citing *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010).

[9] *See Murphy*, 619 F.3d at 1159, n.4 (noting a plan participant "is not entitled to a second chance to prove his disability") (citing *Sandoval,* 967 F.2d at 381) (other internal citations omitted).

interest exists or "when there is evidence that a claimant could not have presented in the administrative process."[10]

An inherent conflict of interest arises when a claims administrator acts in a dual role as both administrator/evaluator and insurer/payor of a claim.[11] The court reviewing a denial of benefits considers the conflict of interest as a factor in its abuse of discretion analysis, weighing it "more or less heavily depending on the seriousness of the conflict."[12] Courts generally view the conflict as more important "where circumstances suggest a higher likelihood that it affected the benefits decision" and as less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy."[13]

Courts in this District and the Tenth Circuit apply the scope of discovery standard of Fed. R. Civ. P. 26(b) to requests for extra-record discovery related to a dual-role conflict of interest.[14] Under this standard, parties are entitled to discovery regarding matters that are both "relevant to any party's claim or defense and proportional to the needs of the case."[15] But "neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim."[16] The district court must balance its "substantial discretion in handling discovery

---

[10] *McNeal*, 998 F. Supp. 2d at 1041 (citing *Hall*, 300 F.3d at 1203).

[11] *Meyer v. UNUM Life Ins. Co. of Am.*, No. 12–1134–KHV, 96 F. Supp. 3d 1234, 1245 (D. Kan. 2015) (citing *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112 (2008)).

[12] *Id*. (citing *Murphy,* 619 F.3d at 1157 n. 1).

[13] *Id*. at 1246 (citing *Glenn,* 554 U.S. at 117).

[14] *Parker v. Sun Life Assur. Co. of Can*., No. 16-2554-JAR-JPO, 2017 U.S. Dist. LEXIS 42951, at *2 (D. Kan. Mar. 23, 2017) (citing *Murphy*, 619 F.3d at 1162).

[15] *Id*. (citing Fed. R. Civ. P. 26(b)(1), as amended in 2015).

[16] *Id*. (quoting *Murphy*, 619 F.3d at 1162-63).

requests under Rule 26(b),"[17] with "both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim."[18]

Without additional discovery, "a claimant may not have access to the information necessary to establish the seriousness of the conflict. Similarly, the administrator may not be fully able to rebut a claim of conflict by showing that it 'has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances.'"[19] Again, though, the benefit of discovery must be weighed against the burdens and costs.

When determining the necessity of additional discovery, the thoroughness and content of the administrative record can be an important tool.[20] For example, a party seeking conflict discovery might satisfy their burden by pointing to red flags in the administrative record about which "some limited extra-record discovery may reveal additional insight."[21] Even then, when a need is demonstrated for additional discovery, claimants should narrowly tailor any extra-record requests,[22] keeping in mind the goal of efficient resolution of an ERISA claim.

---

[17] *Id*. at *3 (citing *Murphy*, 619 F.3d at 1164).
[18] *Murphy*, 619 F.3d at 1164.
[19] *Murphy*, 619 F.3d at 1158 (citing *Glenn*, 554 U.S. at 117).
[20] *See Murphy*, 619 F.3d at 1163 ("the content of the record might raise concerns about the impact of a conflict, for example by a "lack of thoroughness."); *see Baty v. Metro. Life Ins. Co.,* No. 17-1200-EFM-GEB, 2017 WL 4516825, at *2-3 (D. Kan. Oct. 10, 2017).
[21] *Baty,* 2107 WL 4516825 at *2-3.
[22] *Id.* at *4.

## III.  Discussion

### A.  Duty to Confer

During prior conferences, and throughout the briefing, the parties demonstrated their attempts to resolve their differences through both written correspondence and discussion.  Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

### B.  Plaintiff's Motion to Compel (ECF No. 21)

The parties agree Defendant acted in a dual role regarding the LTD Plan: first, as the insurer (the entity that would pay out benefits); and second, as the administrator (the evaluator making the decision whether benefits are payable); therefore, a conflict exists in this case.  Plaintiff contends discovery outside the administrative record is appropriate because Defendant has a history of biased claims administration.  Plaintiff claims Defendant used file review companies with known financial biases in favor of the insurance industry, with no system in place to ensure these review companies control their own financial biases.  Additionally, Plaintiff argues the administrative record indicates Defendant's financial conflict of interest tainted its decision, because Defendant relied on what Plaintiff perceives as an unethical, impersonal psychiatric review to support its denial of benefits.  Plaintiff claims another file review relied upon by Defendant is implausible on its face.

Defendant argues Plaintiff's requests are not narrow or targeted, but contain more than 40 separate requests regarding a wide range of topics.  Generally, Defendant objects to Plaintiff's discovery requests as unnecessarily overbroad and burdensome.  Most

requests seek information over a seven-year span, rather than the three-year time frame (August 2014 to October 2017) during which Defendant considered Plaintiff's claim. Many requests also use broad phrasing, such as "any and all communications" or "any and all documents."  Rather than this being an efficient ERISA matter, Defendant contends Plaintiff has served discovery as if this is the typical civil litigation.  Furthermore, Defendant argues Plaintiff did not object to the administrative record as required in the Scheduling Order, and has not met her burden to show the administrative record itself to be inadequate.

Although the Court understands Defendant's argument regarding Plaintiff's failure to object to the administrative record as produced, the discussion at the motion conference illuminated Plaintiff's concerns.  The information Plaintiff currently seeks is that which would not typically be produced as part of the administrative record considered by Hartford.  Plaintiff seeks extra-record information, generally, about Defendant's own processes.  Therefore, although the Court takes note of Defendant's concern, it chooses to review Plaintiff's separate requests on the merits rather than overruling them on the basis of any untimely objection.

Plaintiff's motion to compel includes six categories of information, encompassing 15 separate discovery requests.  Each group of requests will be addressed in turn.

### 1.	Governing Plan Documents

The first topic addresses a single Request for Production ("RFP"), RFP No. 4.  This request seeks, "Copies of all agreements, contracts, communications, memoranda, or other

written materials regarding this policy, the subject long-term disability plan, Policy No. GL/GLT-696984." (ECF No. 21-1 at 4.)

On review of the briefing, and after discussion with the parties, it appears the dispute regarding this RFP is resolved. Plaintiff's motion modified her prior request for "all . . . written materials regarding this . . . policy," to seek only Defendant's "master" insurance policy, as well as "similar plan-level governing documents" in Defendant's control. (ECF No. 21.) Defendant produced as part of the administrative record the "Certificate of Insurance," which contains the relevant coverage terms and conditions applicable to Plaintiff's benefit claim. Defendant also agrees to produce the master policy in force between Defendant and Plaintiff's employer during the time period Plaintiff's claim was pending. Because Plaintiff's Reply and representation during the conference indicated she will accept the master policy as responsive to RFP No. 4, Plaintiff's motion is **DENIED AS MOOT regarding Plaintiff's RFP No. 4**. Defendant is expected to produce the master policy forthwith.

### 2. Claim File Documents

The second disputed category of Plaintiff's requests include the following:

**RFP No. 1**: any and all correspondence, interoffice memoranda, notes or emails to anyone or received from anyone regarding the plaintiff's long-term disability claim at any time.

**RFP No. 5**: any and all correspondence or communication with any person or entity who reviewed the medical records of plaintiff.

**RFP No. 20**: all documents, records, and information that demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of 29 C.F.R. 2560.503-1, with respect to the benefit determinations at issue in this lawsuit.

(ECF No. 21-1 at 1, 6, 34-38.) Plaintiff's motion states she has now limited these three requests to seek "all documents and correspondence generated in the course of Hartford's consideration of O'Sullivan's claims." (ECF No. 21 at 3.) Defendant objects to the Requests as overly broad and unduly burdensome, as well as seeking potentially privileged documents, without any restriction or temporal limitation. Defendant contends all responsive, non-privileged communications are contained within the administrative record previously produced, and therefore it has fully complied. (ECF No. 30 at 11.) Plaintiff's Reply notes she "accepts Hartford's representation that it has produced the full and complete claim file," which resolves RFP Nos. 1 and 5. (ECF No. 31 at 7.) However, Plaintiff still believes Defendant failed to respond to RFP No. 20.

Plaintiff's Reply, for the first time, narrows the universe of documents sought by RFP No. 20 to those "during the 2014-15 timeframe." (*Id.*) She contends although she may have the complete administrative record, there is nothing included in the record to demonstrate how Defendant complied with the safeguards required by 29 C.F.R. 2560.503-1(b)(5). This ERISA regulation requires an employee benefit plan to "establish and maintain reasonable claims procedures" including processes and safeguards designed to ensure the plan's claims decisions are made in accordance with governing plan documents and the plan is applied consistently.[23] Plaintiff argues Defendant has a "preexisting legal duty to provide the requested" information to Plan participants such as Plaintiff (ECF No.

---

[23] 29 C.F.R. 2560.503-1(b)(5).

21 at 4) and the information is deemed relevant under the ERISA claim procedure regulation (ECF No. 31 at 7).

Defendant contends it has no documents specifically responsive to this request; rather, it claims its compliance processes are unwritten. In its four-page written response to RFP No. 20, it outlines the steps it has taken "to reduce the potential bias stemming from its purported conflict of interest and promote the accuracy of its claim determinations." (ECF No. 21-1 at 35-38.) In her motion, Plaintiff contends she should not have to accept this "unsworn statement" (ECF No. 21), but Defendant later supports its response with sworn affidavits, attached to its brief. (ECF No. 30, Exs. 2-4.) In Plaintiff's Reply, she appears to accept Defendant's affidavits, but still contends Defendant "ought to be able to produce documents reflective of its stated policies." (ECF No. 31 at 9.)

Defendant produced the entire administrative record, affirmatively stated it possesses no responsive documents, and provided a narrative response to RFP No. 20. Regardless of whether Defendant's unsworn narrative statement is an appropriate method of response to a Rule 34 document request,[24] the Court accepts Defendant's later affidavits and its statement it has no responsive documents. It is not clear in Plaintiff's briefing what else she is looking for. The Court finds Plaintiff fails to meet her burden to demonstrate why the administrative record and other information provided by Defendant is insufficient.

As set forth above, Plaintiff's motion is **DENIED as moot as to RFP Nos. 1 and 5**, and **DENIED as to RFP No. 20**.

---

[24] The Court does not reach this issue, given the sworn affidavits later provided.

### 3. File Review Companies and Compensation

In the next category of requests, Plaintiff asks Defendant to produce information about two outside vendors (MES Peer Review Services ("MES") and Professional Disability Associations ("PDA")) hired by Defendant, and two physicians. Defendant retained the vendors to engage the physicians to complete reviews of Plaintiff's medical condition. The disputed portions of these requests are:

**RFP No. 11**: 1099 forms that show amounts paid by Hartford for the years 2012 to present with respect to MES, PDA, Taral Sharma, MD, and Dr. Elizabeth Haglind.

**RFP No. 12**: All documents reflecting attempts by Hartford to ensure that MES, PDA, Taral Sharma, MD, and Dr. Elizabeth Haglind have no financial biases that would interfere with their ability to provide accurate evaluations.

**RFP No. 13**: All documents reflecting attempts by Hartford to ensure that MES Peer Review Services, PDA, Taral Sharma, MD, and Dr. Elizabeth Haglind have no non-financial biases that would interfere with their ability to provide accurate evaluations.

**Interrog. No. 3**: For each physician, file reviewer, surveillance company, or vendor you used in your review of this claim, please provide. . . (e) the fees paid to each vendor and/or file reviewer for the past five years; (f) information about the number of time each file reviewer has reviewed claims for Hartford; and (g) statistics concerning the outcomes of the reviews for the past 7 years.

(ECF No. 21-1 at 11, 13-20, 40-41.) Plaintiff argues all the information sought is necessary to demonstrate bias, and financial and other incentives to vendors and reviewers. Vendor compensation (through 1099's), has previously been relied upon at summary judgment.[25] Plaintiff also believes marketing materials from PDA gleaned from the Internet suggests PDA helps its customers obtain "desired outcomes;" and it sponsors conferences which

---

[25] Pl.'s Motion, ECF No. 21 at 5, citing *Meyer v. UNUM Life Ins. Co. of Am.*, 96 F. Supp. 3d 1234, 1244 (D. Kan. 2015) (discussing the amount paid by the defendant insurance company to a physician reviewer for the 5 years prior to and surrounding plaintiff's claim for benefits).

excludes claimants' lawyers. (ECF No. 21, Ex. B. at 5, 64, 69, 91, 106.) Plaintiff claims Defendant paid MES over $1.4 million and PDA over $2.8 million between March 2017 and January 2018—information Plaintiff gleaned from a separate case pending in D. Kan.[26] Plaintiff also contends Defendant evaluates its employees based on the number of referrals they make to outside preferred vendors, such as MES and PDA. Plaintiff bases this belief on a 2014 federal case in the District of Nevada.[27]

Defendant previously agreed to produce the contracts with its vendors and the curriculum vitae of each physician reviewer. The amounts paid to each vendor for their services on Plaintiff's claim are included in the administrative record. The affidavit of Defendant's employee also outlines the percentage of external reviews it obtained from MES and PDA from 2014 through 2017. (*Id*. at 3-4 ¶ 9.) Defendant argues any additional discovery is of no probative value to the conflict analysis, and cites multiple federal cases supporting its position.[28] It also contends the burden of responding to Plaintiff's statistical requests (Interrog. Nos. 3(f) & (g)) would be enormous, and supports its claim of undue burden with an affidavit from its Clinical Practices Consultant (Gibson Decl., ECF No. 30-3.) Although Defendant tracks statistical information related to the status of claims

---

[26] Pl.'s Motion, ECF No. 21 at 5, citing *Stroot v. Hartford Life & Accident Ins. Co.*, Case No. 6:18-cv-01274-JWB-TJJ (*see* ECF No. 29-1, at 10.).

[27] Pl.s' Motion, ECF No. 21, at 5, citing *Hertz v. v. Hartford Life & Acc. Ins. Co.*, 991 F. Supp. 2d 1121, 1134 (D. Nev. 2014) (finding significant evidence that "Hartford evaluates its employees according to their ability to deny and terminate claims" and "Hartford evaluates its employees on how frequently they make referrals to" a specific outside vendor.)

[28] Def.'s Resp., ECF No. 30 at 12-13, citing, e.g., *Murphy*, 619 F.3d 1164, n. 9 ("The utility of such expansive discovery is likely in all but the most unusual cases to be outweighed by the burdensomeness and costs involved."); *Rutherford v. Reliance Standard Life Ins. Co.*, No. 10–2456–JWL, 2011 WL 4376557 at *4 (D. Kan. Sept. 20, 2011) (denying motion to compel statistical data as "an example of an 'unwieldy, burdensome and speculative fishing expedition' mentioned in *Murphy*").

generally, it does not track each reviewing physician's specific findings. Defendant estimates it would take 16,928 hours to manually review its files to identify the statistical information sought by Plaintiff. (*Id*. at 3 ¶ 8.)

With regard to the financial information sought in RFP No. 11 and Interrogatory 3(e), the Court finds Plaintiff's request, as written, overly broad. Plaintiff seeks seven years of information in RFP No. 11 and Interrogatory No. 3(e), when her claim was only active for three years. It appears Plaintiff now has all the financial information regarding payments to vendors and reviewing physicians on this claim. According to her briefing, Plaintiff apparently also has the information regarding the amounts Defendant paid to these same vendors, generally, in 2017-18.[29] Plaintiff has provided no part of the administrative record for the Court's review to determine whether this information is truly adequate. Therefore, Plaintiff fails to meet her burden to demonstrate why the information she possesses is insufficient. Plaintiff's motion to compel is **DENIED with regard to RFP No. 11 and Interrogatory No. 3, subpart (e)**.

Plaintiff withdrew Interrogatory No. 3, subpart (g), based upon the company's affidavit. (Pl.'s Reply, ECF No. 31 at 8.) The remaining statistical request is found in Interrogatory No. 3(f), seeking information about the number of times each file reviewer has reviewed claims for Defendant. Regarding the information sought in Interrogatory No. 3(f), this Court finds such raw statistical evidence ignores the unique and potentially determinative distinctions in individual cases presented to each reviewer. At best, it is

---

[29] Pl.'s Motion, ECF No. 21 at 5, citing *Stroot*, Case No. 6:18-cv-01274-JWB-TJJ (*see* ECF No. 29-1, at 10.).

circumstantial evidence, which could lead to "a morass of secondary and remote arguments going to which other cases are comparable."[30]  The potential probative value of such evidence does not justify the potential burden and costs demonstrated, through affidavit, by Defendant.  Therefore, Plaintiff's motion to compel is **DENIED as to Interrogatory No. 3, subpart(f)**.

RFP Nos. 12 and 13 seek documentation regarding Defendant's attempts to prevent both financial and non-financial biases in its vendors and physician reviewers.   Again, in Defendant's responses to the RFPs, in the same fashion as its responses to RFP No. 20 discussed above, Defendant details the steps it takes to ensure fair and accurate claims determinations.  (*See* ECF No. 21-1, at 13-20.)  Whether or not this is an appropriate method of response to a Rule 34 request is immaterial, as this information is restated in the sworn affidavits attached to Defendant's Response (ECF No. 30, Exs. 2-4.)

Although the Court previously accepted Defendant's sworn explanations, as in its analysis above of RFP No. 20, during the discussion of RFP Nos. 12 and 13 at conference, Plaintiff argued Defendant acknowledged it has "practices."  Defendant contended during oral argument it has no practices "specifically responsive."  But Defendant was unsure whether any written documents exist or whether the steps outlined in its discovery responses are just general practices.

Unconvinced, Defendant has fully explored the extent of its written policies regarding  reduction of bias, the Court orders the following:  to the extent Defendant can

---

[30] *Murphy*, 619 F.3d at 1164 n. 9; *see also Rutherford*, 2011 WL 4376557 at *4 (denying request for statistical information).

locate any written practices, procedures, or policies evidencing its attempts to reduce any financial or non-financial biases of its vendors or physician reviewers, the Court **ORDERS** Defendant to supplement RFP Nos. 12 and 13.  Furthermore, after discussion during the conference, the Court **ORDERS** these requests to be limited to the time frame during which Plaintiff's claim was being considered.   As set forth herein, Plaintiff's motion to compel is **GRANTED in part as to RFP Nos. 12 and 13**.  Defendant must supplement RFP Nos. 12 and 13 **within three weeks of the filing of this written order**.

### 4.     Efforts to Minimize Impact of Conflict of Interest

Plaintiff's next group of requests are similar to RFP Nos. 12 and 13 discussed above. In RFP Nos. 18 and 19, Plaintiffs seek information demonstrating steps taken by Defendant to reduce bias and promote accuracy in its own processes (rather than in its vendors and physicians as sought by RFP Nos. 12 and 13).  These requests are:

> **RFP No. 18**:  Any documents that show the steps taken by Hartford to reduce potential bias and to promote accuracy in the claims process.
>
> **RFP No. 19**:  Any and all documents showing Hartford's policies designed as management checks to penalize inaccurate decision-making (irrespective of whom the inaccuracy benefits).

(ECF No. 21-1 at 27-34.)  Again, in Defendant's responses to the RFPs, in the same fashion as its responses to RFPs Nos. 12, 13 and 20, Defendant provides no documents but responds narratively about the steps it takes to ensure fair and accurate claims determinations.  (*Id.*)  Whether or not this is an appropriate method of response is immaterial, as this information is restated in the sworn affidavits attached to Defendant's Response. (ECF No. 30, Exs. 2-4.)

However, as discussed above, during the conference, the parties' positions were clarified. Defendant argues the requests are overbroad, seeking "all documents" and not just policies and practices. Plaintiff argued that Defendant has acknowledged it has "practices." Defendant contended during oral argument it has no practices "specifically responsive," but Defendant was unsure whether any written documents exist or whether the steps outlined in its discovery responses are just general practices.

Because the Court is unconvinced, on the basis of the parties' representations at the conference, that Defendant has fully explored the extent of its written policies regarding reduction of bias and promotion of accuracy, the Court orders the following: To the extent Defendant can locate any written practices, procedures, or policies evidencing its attempts to reduce potential biases, promote accuracy, and penalize inaccurate decision-making in its claims process, the Court **ORDERS** Defendant to supplement RFP Nos. 18 and 19. Furthermore, after discussion during the conference, the Court **ORDERS** these requests to be limited to the time frame during which Plaintiff's claim was being considered. As set forth herein, Plaintiff's motion to compel is **GRANTED in part as to RFP Nos. 18 and 19**. Defendant must supplement RFP Nos. 18 and 19 **within 3 weeks of the filing of this written order**.

### 5. Employee Evaluations and Criteria for Evaluations

The next category of information sought by Plaintiff involves Defendant's evaluations of its employees, and whether such evaluations are determined in part by the number of referrals employees make to specific vendors. The requests include:

**RFP No. 14**: The performance evaluations and performance reviews since January 1, 2012 for each employee of Hartford who was involved in this claim.

**RFP No. 15**: Defendant's written criteria or standards for employee compensation, bonuses and awards.

Plaintiff contends a 2014 federal case in Nevada, *Hertz v. v. Hartford Life & Acc. Ins. Co.*,[31] found Defendant evaluates its employees based on the number of referrals they make to outside preferred vendors like MES Solutions. Plaintiff argues how Defendant coaches its employees is relevant to how the Court will ultimately weigh Defendant's conflict. Plaintiff cites cases from outside this district permitting discovery of such information,[32] as well as one District of Kansas case referencing employee counseling in its summary judgment analysis.[33]

Defendant argues Plaintiff's requests are overbroad, seeking more than seven years of employee reviews for each employee involved, regardless of the employee's role in the decision-making process. Defendant expresses concern regarding the privacy of its employees' personal information, and cites a 2012 District of Kansas decision in *Perkins v. Hartford Life and Acc. Ins. Co.*,[34] to contend Plaintiff's requests should be denied.

In its discretion, the Court will permit, with certain limitations, the discovery of employee evaluations and reviews, and Defendant's written criteria or standards as

---

[31] *Hertz v. Hartford Life & Acc. Ins. Co.*, 991 F. Supp. 2d 1121, 1135 (D. Nev. 2014).

[32] ECF No. 21 at 7, citing *Hertz*, 991 F. Supp. 2d at 1135; citing *Black v. Hartford Life & Acc. Ins. Co.*, 2018 WL 3872113 (D. Or. 2018); *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 WL 7571905, at *6 (W.D. Ky. Nov. 24, 2015).

[33] *Meyer*, 96 F. Supp. 3d at 1248 (considering whether the insurance company counseled its medical reviewer regarding an error, and noting the lack of counseling "suggests actual bias and is entitled to some weight").

[34] No. 11-2557-KHV, 2012 WL 3834745, at *2 (D. Kan. 2012) (finding the request overly broad on its face "because it would include clerical employees having no substantive involvement in the decision" and also because the court accepted defendant's unequivocal discovery responses).

outlined in Plaintiff's RFP Nos. 14 and 15. However, the breadth of the requests is narrowed to the three years in which Plaintiff's claim was being considered (2014 – 2017), and is limited to those employees who were decision-makers.[35] The parties have agreed upon, and the Court approved and filed, a Protective Order (ECF No. 13), and any employee information will be protected under that Order. Therefore, Plaintiff's motion to compel is **GRANTED in part as to RFPs Nos. 14 and 15**.

### 6. Statistics and Documents Concerning This Plan

Plaintiff's final category of disputed requests seeks information about Defendant's other claim determinations. Though similar to the information sought in category 3 above, these requests seek information about claims decided under the disability policy issued to Plaintiff's employer, rather than those involving review vendors. The requests include the following:

> **RFP No. 16**: Management reports showing Hartford's denial rates on disability insurance claims by employees of Spirit Aerosystems Holdings, Inc. for the years 2012 through 2017.

> **RFP No. 17**: Claims payment history on Group Account Policy No. GL/GLT-696984 for the years 2012 through 2017.

> **Interrog. No. 6:** Please state the total number of claims made under the subject disability plan for the last ten (10) years; with respect to those, please state the following:
> a. Number of claims approved;
> b. Total amounts paid for LTD benefits under the plan;
> c. The number of claims denied under the plan; and
> d. The dollar amount expended by Defendant on the individuals and entities identified above for each claim that was denied.

---

[35] *See id.*

(ECF No. 21-1 at 24-27, 45-46.) In Plaintiff's motion and Reply, she maintains this group of requests "as limited" simply seeks documents reflecting denial rates and termination rates for the subject plan for 2012-2017.

Plaintiff contends Defendant's own management reports to its shareholders suggest the company is capable of providing this information. (ECF No. 21 at 8.) Defendant maintains the requests are unduly burdensome, because it does not track this information in the regular course of its business. It argues to determine the amount of benefits paid under the Plan, and the costs incurred for each claim denied under the Plan, would require Hartford to manually review every LTD claim file for the requested time period.

The review of this statistical information sought is the same standard as that requested above in Interrog. No. 3(f). The Court finds Plaintiff's requests overbroad, even as limited, because Plaintiff seeks years of information rather than information limited to the timeframe of Plaintiff's claim. More importantly, this Court finds the potential probative value of such evidence does not justify the potential burden and costs demonstrated by Defendant. At this juncture, in the Court's discretion, Plaintiff's motion regarding **RFP Nos. 16 and 17 and Interrog. No. 6 is DENIED**.

## IV.    Conclusion on Plaintiff's Motion to Compel (ECF No. 21)

After review of the disputed discovery, not only does the Court find Plaintiff generally fails to meet her burden to demonstrate the propriety of extra-record discovery (in some instances), but the Court has overarching concerns with the broadness of Plaintiff's requests. In an ERISA action, extra-record discovery should occur only in "the

unusual case."[36]  Rather than pointing out limitations of the administrative record in this case, or red flags raised therein, to support her extra-record requests, Plaintiff points to information gained through various external sources, and seeks wide timeframes of information.   Here, Plaintiff served Defendant with 20 requests for production of documents, not including many subparts, along with several interrogatories and requests for admission.  The Court is concerned the use of such methods in every ERISA denial-of-benefits case would hamper the necessary efficiency of an ERISA matter, and reduce every such case to the run-of-the-mill civil action.[37]

But as explained to the parties during the conference, this ruling does not prohibit Plaintiff from later seeking additional discovery if the information produced by Defendant leads Plaintiff to believe something is missing from its conflict analysis.   However, the Court encourages Plaintiff to ensure any future requests are supported by either evidence previously produced or some red flags in the record, and any future requests are narrowly tailored.

For the reasons set forth above, **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery (**ECF No. 21**) is **GRANTED in part** and **DENIED in part**.

---

[36] *McNeal v. Frontier AG, Inc.*, No. 12–1284–RDR, 998 F. Supp. 2d 1037, 1041 (D. Kan. 2014) (citing *Hall v. UNUM Life Ins. Co. of Am.,* 300 F.3d 1197, 1203 (10th Cir. 2002)).

[37] *Parker*, 2017 U.S. Dist. LEXIS 42951, at *2 (quoting *Murphy*, 619 F.3d at 1162-63) ("neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim.")

## V. Revised Scheduling Order

In light of the discovery permitted, and after thorough discussion with counsel, the prior stay of deadlines (Order, ECF No. 27) is lifted, and the deadlines established in the prior Scheduling Order (ECF No. 9) are modified as follows:

| SUMMARY OF DEADLINES | |
|---|---|
| Event | Deadline/Setting |
| Confidential settlement reports to magistrate judge | 6/7/19 |
| Jointly filed mediation notice | 8/2/19 |
| Mediation completed | 9/20/19 |
| Supplementation of disclosures & any discovery responses | Per rule |
| All discovery completed | 7/31/19 |
| Physical and mental examinations | n/a |
| Jointly proposed protective order submitted to court | completed |
| Motions to dismiss | (deadline passed) |
| Motions to amend | (deadline passed) |
| All other potentially dispositive motions (e.g., summary judgment)<br>    Responses<br>    Replies | 10/4/19<br><br>10/25/19<br>11/8/19 |
| Status conference (phone) | n/a |
| Proposed pretrial order due | 8/7/19 |
| Pretrial conference (phone) | 8/12/19 @ 11:00 a.m. |
| Proposed findings of fact & conclusions of law – due 14 days before trial | 3/23/20 or 4/27/19, depending on trial setting |
| Court Trial in Wichita; ETT: 1-2 days (courtroom TBD) | 4/6/20<br>(2nd setting; could move to 5/11/19) |

All other requirements and guidelines found in the prior Scheduling Order (ECF No. 9) continue to govern this litigation.

**IT IS SO ORDERED.**

Dated this 22nd day of May, 2019.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge